# 23-367-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

»» ««

BRAD PACKER, derivatively on behalf of
1-800-FLOWERS.COM, INC.,

*Plaintiff-Appellant,*

*v.*

RAGING CAPITAL MANAGEMENT, LLC, RAGING CAPITAL MASTER FUND, LTD.,
1-800-FLOWERS.COM, INC., WILLIAM C. MARTIN,

*Defendants-Appellees.*

*On Appeal from the United States District Court
for the Eastern District of New York*

## BRIEF FOR PLAINTIFF-APPELLANT

Glenn F. Ostrager
Joshua S. Broitman
Roberto L. Gomez
OSTRAGER CHONG FLAHERTY
& BROITMAN P.C.
437 Madison Avenue, 24th Floor
New York, New York 10022
212-681-0600

*and*

PAUL D. WEXLER
437 Madison Avenue
New York, New York 10022
917-743-6072

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................ iii

JURISDICTIONAL STATEMENT ..................................................... 1

STATEMENT OF ISSUE PRESENTED ............................................ 2

STATEMENT OF THE CASE ........................................................... 4

STATEMENT OF FACTS ................................................................ 6

GOVERNING LAW .......................................................................... 8

    1.    Section 16(b) of the Exchange Act ........................... 8

    2.    Background of the Statute ......................................... 10

    3.    Section 16(b) Common Law Analogues .................... 13

SUMMARY OF ARGUMENT .......................................................... 16

STANDARD OF REVIEW ............................................................... 18

ARGUMENT .................................................................................... 19

    THE SUPREME COURT AND THE SECOND CIRCUIT
    HAVE UNIFORMLY UPHELD THE STANDING OF
    AN ISSUER AND A DERIVATIVE PLAINTIFF TO
    ASSERT SECTION 16(b) CLAIMS..................................... 19

        A.    The Supreme Court and Second Circuit Precedents
                Establish Standing for FLWS and Packer ................ 20

        B.    *Bulldog* Has Not Been Undermined by Subsequent
                Supreme Court or Second Circuit Decisions ............ 22

1. The *TransUnion* Decision ....................................... 22

2. Section 16(b) Standing Survives *TransUnion*
   Analysis Because It Finds Its
   Roots in Common Law .......................................... 25

CONCLUSION ............................................................... 30

CERTIFICATE OF COMPLIANCE ................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Klawans*
    267 F.2d 840 (2d Cir. 1959) ....................................................... 27

*American Standard, Inc. v. Crane Co.*
    510 F.2d 1043 (2d Cir. 1974),
    *cert. denied*, 421 U.S. 1000 (1975) ...................................... 6, 13, 14, 15, 29

*Benisch v. Cameron*
    81 F. Supp. 882 (S.D.N.Y. 1948) ............................................ 12

*Blau v. Lamb*
    363 F.2d 507 (2d Cir. 1966),
    *cert. denied*, 385 U.S. 1002 (1967) ....................................... 10

*Blau v. Mission Corp.*
    212 F.2d 77 (2d Cir. 1954),
    *cert. denied,* 347 U.S. 1016 (1954) ....................................... 22

*Blau v. Oppenheim*
    250 F. Supp. 881 (S.D.N.Y. 1966) ........................................... 26

*Bohnak v. Marsh & McLennan Cos.*
    580 F. Supp. 3d 21 (S.D.N.Y. 2022) ........................................ 26

*Brophy v. Cities Serv. Co.*
    31 Del. Ch. 241, 70 A.2d 5 (1949) .......................................... 15

*Cruper-Weinmann v. Paris Baguette America, Inc.*
    235 F. Supp. 3d 570 (S.D.N.Y. 2017),
    *aff'd*, 861 F.3d 76 (2d Cir. 2017) ........................................ 25

*DeConstanzo v. Glaxosmithkline PLC*
21 Civ. 4869 (GRB) (AYS),
2022 WL 17338047 (E.D.N.Y. Nov. 29, 2022) ..................................... 25

*Diamond v. Oreamuno*
24 N.Y.2d 494, 248 N.E.2d 910,
301 N.Y.S.2d 78 (1969).................................................... 15, 19, 29

*Donoghue v. Bulldog Investors Gen. P'ship*
696 F.3d 170 (2d Cir. 2012),
*cert. denied*, 569 U.S. 994 (2013)........................................ *passim*

*Feder v. Frost*
220 F.3d 29 (2d Cir. 2000) ..................................................... 10

*Fistel v. Christman*
133 F. Supp. 300 (S.D.N.Y. 1955) ........................................... 12

*Foremost-McKesson, Inc. v. Provident Sec. Co.*
423 U.S. 232 (1976)........................................................ 9, 14

*Gollust v. Mendell*
501 U.S. 115 (1991)................................................ 9, 12, 20, 21, 24

*Goodwind v. Agassiz*
283 Mass. 358, 186 N.E. 659 (1933)......................................... 15

*Gratz v. Claugton*
187 F.2d 46 (2d Cir. 1951),
*cert. denied*, 341 U.S. 920 (1951)........................................ *passim*

*Gwozdzinsky v. Zell/Chilmark Fund, L.P.*
156 F.3d 305 (2d Cir.1998),
*aff'd*, 156 F.3d 305 (2d Cir. 1998)......................................... 9

*Kern County Land Co. v. Occidental Petroleum Corp.*
411 U.S. 582 (1973) ...................................................... 11, 20

*Klein v. Cadian Capital Mgmt., LP*
15 Civ. 8140 (ER), 2017 WL 4129639
(S.D.N.Y. Sept. 14, 2017), *vacated on other grounds
and remanded*, 906 F.3d 215 (2d Cir. 2018)........................... 24, 25

*Klein v. Qlik Techs., Inc.*
906 F.3d 215 (2d Cir. 2018),
*cert. dismissed*, 139 S. Ct. 1406 (2019)................................. 24, 25

*Leroy v. Great W. United Corp.*
443 U.S. 173 (1979) ................................................................ 11

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992) ........................................................ 3, 12, 18

*Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*
19 F.4th 58 (2d Cir. 2021)........................................ 2, 16, 23, 24

*Magida v. Continental Can Co.*
231 F.2d 843 (2d Cir. 1956),
*cert. denied*, 351 U.S. 972 (1956)........................................... 22

*Magma Power Co. v. Dow Chem. Co.*
136 F.3d 316 (2d Cir. 1998) ................................................. 9, 21

*McMynn v. Richardson-Phenix Co.*
186 Wis. 442, 201 N.W. 272 (1924) ...................................... 15

*Moreira v. Société Générale S.A.*
573 F. Supp. 3d 921 (S.D.N.Y. 2021) .................................... 26

*Packer v. Raging Capital Mgmt.*
981 F.3d 148 (2d Cir. 2020)................................................. 4, 6, 7

*Packer v. Raging Capital Mgmt.*
15-CV-5933 (GRB),
2019 WL 3936813 (E.D.N. Y. Aug. 20, 2019),
*vacated and remanded*, 981 F.3d 148 (2d Cir. 2020) ............ 4, 7, 8

*Park & Tilford, Inc. v. Schulte*
    160 F.2d 984 (2d Cir. 1947),
    *cert. denied*, 332 U.S. 761 (1947)............................................................ 5

*Reliance Elec. Co. v. Emerson Elec. Co.*
    404 U.S. 418 (1972)........................................................... 9, 11, 21

*Rothenberg v. United Brands Co.*
    74 Civ. 5735, 1977 WL 1014, (S.D.N.Y.)
    *aff'd*, 573 F.2d 1295 (2d Cir. 1977)....................................................... 30

*Smolowe v. Delendo*
    136 F.2d 231 (2d Cir. 1943),
    *cert. denied*, 320 U.S. 751 (1943).......................................... 5, 9, 10, 11, 29

*Sonterra Cap. Master Fund Ltd. v. UBS A.G.*
    954 F.3d 529 (2d Cir. 2020) .................................................................. 18

*Spokeo, Inc. v. Robbins*
    578 U.S. 330 (2016) ........................................................... 3, 17, 18, 20, 23,
    24, 25, 26, 30

*Sucesores de Don Carlos Nuñez y Doña Pura*
*Galvez, Inc. v. Société Générale, S.A.*
    577 F. Supp. 3d 295 (S.D.N.Y. 2021) .................................................... 26

*TransUnion v. Ramirez*
    141 S. Ct. 2190 (2021)....................................................................*passim*

*U. S. v. Ianniello*, 808 F.2d 184 (2d Cir. 1986), *abrogated*
*on other grounds*, *U.S. v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989)............... 24, 25

*Warth v. Seldin*
    422 U.S. 490 (1975).............................................................................. 27

## U.S. Constitution

Article III ...................................................................................... *passim*

## Statutes

28 U.S.C. §1291 .......................................................................... 1

28 U.S.C. §1331 .......................................................................... 1

Securities Exchange Act of 1934 ("Act"), 15 U.S.C. §78(a) *et seq.*

    Act § 13(d), 15 U.S.C. §78m(d) ............................................ 7

    Act § 16(a), 15 U.S.C. §78p(a) ............................................. 11

    Act § 16(b), 15 U.S.C. §78p(b) ........................................... *passim*

Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* .................................. 22, 23, 24

## Rules

Rules Under the Securities Exchange Act of 1934, 17 C.F.R. 240.01 *et seq.*

    Rule 16a-1(a)(2), 17 C.F.R. §240.16a-1(a)(2)....................................... 8

## <u>Other Authorities</u>

10 S.E.C. Ann. Rep. 50 (1944) ....................................................... 10

Arnold S. Jacobs, *An Analysis of Section 16
of the Securities Exchange Act of 1934,*
32 N.Y.L. Sch. L. Rev. 209 (1987).................................................... 10, 11, 15, 16

Brief Submitted by Thomas G. Corcoran and
Benjamin V. Cohen in Support of Constitutionality
of Stock Exchange Bill, *Hearings Before the House Comm.
on Interstate &Foreign Commerce on H.R. 7852 and
H.R. 8720*, 73d Cong., 2d Sess., 925 (1934)......................................... 14

Donald C. Cook & Myer Feldman, *Insider Trading
Under the Securities Exchange Act*,
66 Harv. L. Rev. 385 (1953) ........................................................... 10, 26

*Hearings Before the House Comm. on Interstate & Foreign
Commerce on H.R. 7852 and H.R. 8720*, 73d Cong., 2d Sess. (1934)............. 12, 14

*Hearings Before the Senate Comm. on Banking &
Currency on S. Res. 84 (72d Cong.) and S. Res. 56
and 97 (73d Cong.)*, 73d Cong., 1st Sess., Part 15 (1934) .............................. 11, 13

*Ownership Reports and Trading by Officers, Directors
and Principal Security Holders*,
61 Fed. Reg. 30376 (June 14, 1996) ................................................. 19

Restatement (First) of Agency §395 (1933) ...................................... 15

Restatement (First) of Agency §404 (1933) ...................................... 15

Restatement (First) of Trusts §170 (1935)........................................ 28

Restatement (First) of Trusts §205 (1935)........................................ 15

Restatement (First) of Trusts §206 (1935)........................................ 15

Robert S. Ruben & Myer Feldman, *Statutory Inhibitions
Upon Unfair Use of Corporate Information by Insiders*,
95 U. Pa. L. Rev. 468 (1947) ......................................................... 11

*Stock Exchange Practices, Report to the Senate Committee
on Banking & Currency Pursuant to S. Res. 84 (72d Cong.)
and S. Res. 56 and 97 (73d Cong.)*, S. Rep. No. 1455,
73d Cong., 2d Sess. (1934) ...................................................... 13, 14, 29

# JURISDICTIONAL STATEMENT

This is an action to recover short-swing profits pursuant to Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78p(b) ("Section 16(b)" or "§16(b)"), brought by plaintiff-appellant Brad Packer ("Packer" or "Plaintiff") derivatively on behalf of nominal defendant 1-800-Flowers.Com, Inc. ("FLWS" or "Issuer"). The defendants-appellees are Raging Capital Management, LLC ("RCM"), Raging Capital Master Fund, Ltd. ("Master Fund") and William C. Martin ("Martin") (collectively, "Defendants").

The United States District Court for the Eastern District of New York had subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331.

By Opinion and Order dated March 13, 2023 (A126)[1], the district court, Magistrate Judge James W. Wicks, dismissed the Complaint on grounds that FLWS and Plaintiff, a FLWS shareholder, lacked Article III constitutional standing to assert the Section 16(b) claims in this action. The district court entered judgment for Defendants on March 13, 2023. (A148).

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291. Plaintiff filed a Notice of Appeal on March 14, 2023. (A149).

---

[1] Citations to "A___" refers to the Appendix.

<u>**STATEMENT OF ISSUE PRESENTED**</u>

The district court dismissed Plaintiff's shareholder action under Section 16(b) against Defendants, beneficial owners of more than 10% of FLWS stock. The district court relied on the Supreme Court decision in *TransUnion v. Ramirez*, 141 S. Ct. 2190 (2021) ("*TransUnion*") for its holding that a plaintiff may not establish Article III standing by relying entirely on a statutory violation or risk of future harm. *Id.* at 2213-2214; *See also, Maddox v. Bank of N.Y. Mellon Trust Co., N.A.*, 19 F.4th 58, 64 (2d Cir. 2021) ("*Maddox*").

The district court further opined that the Second Circuit would likely come to the same conclusion if presented with the opportunity to reconsider its holding in *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 180 (2d Cir. 2012), *cert. denied*, 569 U.S. 994 (2013) ("*Bulldog*") that "short-swing trading in an issuer's stock by a 10% beneficial owner in violation of Section 16(b) of the Securities Exchange Act causes injury to the issuer sufficient for constitutional standing."

The issue on appeal is:

Whether the district court erred in dismissing Plaintiff's shareholder action on behalf of FLWS under Section 16(b) against Defendants, beneficial owners of more than 10% of FLWS stock, on grounds that FLWS suffered no concrete harm, and therefore Plaintiff lacked Article III constitutional standing, where the district

court erroneously applied *TransUnion* to conclude that this Court's decision in *Bulldog* is no longer good law.

Yes. *TransUnion* reaffirmed established constitutional standing doctrine, which requires a private plaintiff to show that he or she suffered a "concrete harm" that is defined with reference to American jurisprudence and common law. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 341 (2016) ("*Spokeo*"); *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ("*Lujan*"). In analyzing "concrete injury" the Supreme Court explained that the injury must find its roots in common law, but it need not be an "exact duplicate" of the common law. *TransUnion*, 141 S. Ct. at 2209. The Court also reaffirmed that Congress may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *TransUnion*, 141 S.Ct. at 2204-2205, *quoting*, *Spokeo*, 578 U.S. at 341.

The district court erred in failing to follow this Court's controlling precedent in *Bulldog* which recognizes that Section 16(b) finds its roots in the common law doctrines of breach of trust and fiduciary duty and holds that a violation of the statute constitutes "injury in fact" to an issuer. *See, Bulldog,* 696 F.3d 177-180; *Gratz v. Claugton*, 187 F.2d 46, 49-50 (2d Cir. 1951) (Hand, L.), *cert. denied*, 341 U.S. 920 (1951).

## STATEMENT OF THE CASE

This is an action under Section 16(b) brought by Packer, a shareholder of FLWS, for disgorgement of profits realized by Defendants in trading FLWS common stock.

In a decision dated November 23, 2020, this Court vacated a judgment of Magistrate Judge Gary Brown granting summary judgment and ordered Defendants to disgorge short-swing profits to FLWS in the amount of $4,909,395. The Court remanded the case for further fact findings and trial. *Packer v. Raging Capital Mgmt.*, 15-CV-5933 (GRB), 2019 WL 3936813 (E.D.N. Y. Aug. 20, 2019), *vacated and remanded*, *Packer v. Raging Capital Mgmt.*, 981 F.3d 148 (2d Cir. 2020). On remand, Defendants moved to dismiss on grounds of lack of Article III standing.

In a decision dated March 13, 2023, the district court dismissed this action on grounds that Plaintiff lacked Article III standing. (A126). The district court relied on the Supreme Court's decision in *TransUnion* to hold that a statutory violation of Section 16(b) standing alone does not demonstrate "concrete injury" to the issuer, and therefore neither FLWS nor Plaintiff, its shareholder representative, have Article III standing. (A139-A147).

The district court erred in failing to follow this Court's controlling precedent in *Bulldog,* which held that short-swing trading in an issuer's stock by a 10%

4

beneficial owner in violation of Section 16(b) of the Securities Exchange Act causes "concrete harm" to the issuer sufficient for constitutional standing. *Bulldog,* 696 F.3d at 180. *Bulldog* builds on this Court's prior precedents which have long held that Section 16(b) has its roots in the common law of breach of trust and fiduciary duty. 696 F.3d at 177-180 (citing *Gratz*, 187 F.2d at 49-50). *See also, Smolowe v. Delendo Corp.*, 136 F.2d 231, 239-241 (2d Cir. 1943), *cert. denied*, 320 U.S. 751 (1943); and *Park & Tilford, Inc. v. Schulte*, 160 F.2d 984, 988 (2d Cir. 1947), *cert. denied*, 332 U.S. 761 (1947).

*Bulldog* is fully consistent with the Supreme Court's decision in *TransUnion* and its holding that "[c]entral to assessing concreteness is whether the asserted harm has a 'close relationship' to harm traditionally recognized as providing a basis for a lawsuit in American courts . . . ." 141 S. Ct at 2200. *Bulldog* explains that Congress in enacting Section 16(b) did not "eliminate the injury requirement of standing". 696 F.3d at 180.

> Rather, it created legal rights that clarified the injury that would support standing, specifically, the breach by a statutory insider of a fiduciary duty owed to the issuer not to engage in and profit from any short-swing trading of its stock.

*Id.* at 180.

This Court's precedents recognize that statutory insiders have a fiduciary duty not to trade the issuer's shares within periods of less than six months. A

breach of that duty is of itself, an injury to the issuer. It is concrete in that it is akin

to a breach of trust subject to accounting and payment at common law or by

statute, and that is the remedy prescribed by Section 16(b). *Bulldog*, 696 F.3d 177-

180; *American Standard, Inc. v. Crane Co.*, 510 F.2d 1043, 1060-61 (2d Cir.

1974), *cert. denied*, 421 U.S. 1000 (1975); *Gratz*, 187 F.2d at 49. It is

particularized in that the issuer, either directly, or derivatively through shareholder

intervention, is the one and only proper claimant. *Bulldog*, 696 F.3d at 175-176.

Concreteness and particularization being actually present, and it being

undoubted that a court determination may provide a remedy to the issuer, injury in

fact is undeniable.

The district court decision wrongly "overrules" *Bulldog* and misapplies the

holding of *TransUnion* to Section 16(b) which provides a remedy for harms based

on common law doctrines. *Bulldog*, 696 F.3d 177-180; *American Standard,* 510

F.2d at 1060-61 (2d Cir. 1974); *Gratz*, 187 F.2d at 49.

## STATEMENT OF FACTS

Plaintiff at all relevant times has been an owner of FLWS common stock.

(A20, ¶ 1; A129).

Defendants are a hedge fund comprised of an investment fund (Master

Fund), an investment adviser (RCM), and an individual (Martin) that owns and

controls Master Fund and RCM. (A20-A21, ¶¶ 3-5: A22, ¶ 9; *Packer*, 981 F.3d at

150-151).  RCM manages the investments of Master Fund pursuant to an

Investment Management Agreement between RCM, Master Fund and non-party

feeder funds also controlled by Martin which do not trade securities but merely

funnel money from investors into Master Fund.  *Packer*, 981 F.3d at 150-151. (

A22, ¶ 9).

Defendants do not dispute that Master Fund owned and had a pecuniary

interest in more than 10 percent of FLWS securities or that RCM and Martin made

purchases and sales of FLWS securities for Master Fund within the statutory six

month period, which, if actionable, resulted in short-swing profits recoverable to

FLWS in the amount of $4,909,395. (A22-A24 at ¶¶ 9-13; *Packer*, 981 F.3d at 152,

n.6; *Packer*, 2019 WL 3936813 at *1-*2, and *5).

Martin, Master Fund and RCM acted together as a Section 13(d) group with

respect to trading FLWS common stock and the group was a greater than 10%

beneficial owner of FLWS. (A22-A24, ¶¶ 9-13).  Master Fund admitted that it had

legal title and shared beneficial ownership of FLWS Common Stock with RCM

and Martin in its Securities and Exchange Commission ("SEC") filings (A23-A24,

¶¶ 9-13; *Packer*, 2019 WL 3936813 at *1-*2).

While maintaining a greater than 10% beneficial ownership of FLWS

common stock, from May 1, 2014 through February 9, 2015, Defendants engaged

in short-swing trading of FLWS stock in violation of Section 16(b).  Defendants'

7

SEC filings show that they purchased at least 1,713,078 shares while a greater than 10% beneficial owner between April 30, 2014 and September 30, 2014, and then sold 1,580,504 shares while a greater than 10% beneficial owner between September 30, 2014 and January 31, 2015. (A23-A24, ¶¶ 10-13).

Title to the FLWS equity securities traded on behalf of Master Fund remained with Master Fund at all relevant times. (*Packer*, 2019 WL 3936813 at *2). Thus, Master Fund was a greater than 10% owner by itself and is independently liable to disgorge its short-swing profits. Martin and RCM are jointly liable with Master Fund to the extent of their pecuniary interest in Master Fund's FLWS short-swing profits. SEC Rule 16a-1(a)(2).

Pursuant to Section 16(b), Plaintiff demanded that FLWS investigate this claim and take steps to require Defendants to disgorge profits realized in the foregoing transactions or commence this lawsuit. FLWS failed to do so. (A25, ¶ 19). Plaintiff filed his complaint against the Defendants on October 15, 2015. (A20).

## GOVERNING LAW

### 1.  Section 16(b) of the Exchange Act

Section 16(b) provides that if a person, while beneficially owning more than 10 percent of a class of equity securities of an issuer, purchases and sells, or sells and purchases, shares of any equity security of such issuer within a period of less

than six months, any profits arising from those transactions are recoverable by the

issuer or by a shareholder suing derivatively on its behalf. *Gwozdzinsky v.*

*Zell/Chilmark Fund, L.P.,* 156 F.3d 305, 308 (2d Cir.1998), *aff'd*, 156 F.3d 305 (2d

Cir. 1998). "The statute requires disgorgement to the company of any profit

derived from the matching of any purchase and any sale of an 'equity security' …

within a six month period by a statutory insider, irrespective of intent or whether

overall trading during the six month period (i.e., all sales and purchases combined)

resulted in a loss." *Id.* at 308; *see also Gollust v. Mendell,* 501 U.S. 115, 121

(1991) (quoting §16(b)). The matching of these transactions is intended to be

calculated in such a way as to "squeeze all possible profits out of stock

transactions" by insiders. *Smolowe*, 136 F.2d at 239.

      "No showing of actual misuse of inside information or of unlawful intent is

necessary to compel disgorgement." *Magma Power Co. v. Dow Chem. Co.,* 136

F.3d 316, 320 (2d Cir.1998) (citing *Foremost–McKesson, Inc. v. Provident Sec.*

*Co.,* 423 U.S. 232, 251 (1976); *Reliance Elec. Co. v. Emerson Elec. Co.,* 404 U.S.

418, 424 n.4 (1972)). Rather, §16(b) "operates mechanically, and makes no moral

distinctions, penalizing technical violators of pure heart, and bypassing corrupt

insiders who skirt the letter of the prohibition." *Id.* at 320–21. The statute,

therefore, "imposes liability without fault ... within its narrowly drawn limits." *Id.*

at 321 (internal quotations omitted); *accord Gollust,* 501 U.S. at 122 (explaining

that §16(b) is a strict-liability provision). *Feder v. Frost,* 220 F.3d 29, 32-33 (2d Cir. 2000).

## 2. <u>**Background of the Statute**</u>

Prior to the passage of the Exchange Act, "speculation by insiders—directors, officers, and principal stockholders—in the securities of their corporation was a widely condemned evil." *Smolowe*, 136 F.2d at 235. As the U.S. Securities and Exchange Commission ("SEC") explained, before the Exchange Act was passed, "'profits from 'sure thing' speculation in the stocks of their corporations were more or less generally accepted by the financial community as part of the emolument for serving as a corporate officer or director notwithstanding the flagrantly inequitable character of such trading.'" *Blau v. Lamb*, 363 F.2d 507, 514 (2d Cir. 1966) *cert. denied*, 385 U.S. 1002 (1967) (quoting 10 S.E.C. Ann. Rep. 50 (1944)). When these "stock market abuses were publicized, there was a country-wide call for reform which Congress answered in Section 16 of the Securities Exchange Act." Donald C. Cook & Myer Feldman, *Insider Trading Under the Securities Exchange Act* ("Cook & Feldman"), 66 Harv. L. Rev. 385, 386 (1953) (cataloging abuses). From late April to early June 1934, both houses of Congress held hearings and debates to better understand the problem and design a legislative solution. *See* Arnold S. Jacobs, *An Analysis of Section 16 of the Securities*

*Exchange Act of 1934*, 32 N.Y.L. Sch. L. Rev. 209, 352-57 (1987) ("Jacobs") (in-depth discussion of Section 16(b)'s legislative history).

After making "a considered finding, supported by ample evidence, of the abuses of inside speculation," *Smolowe*, 136 F.2d at 239, Congress determined that the "only method [it] deemed effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great." *Reliance Elec. Co.*, 404 U.S. at 422; *see also*, *Hearings Before the Senate Comm. on Banking & Currency on S. Res. 84 (72d Cong.) and S. Res. 56 and 97 (73d Cong.)*, 73d Cong., 1st Sess., Part 15 at 6557 *et seq*. (1934) ("Senate Committee Hearings") (discussing the views of the Senate committee and of Thomas Corcoran recommending this approach).[2]  The reporting requirements of Section 16(a) and the "flat rule" strict liability provision of Section 16(b) are significant parts of that solution.  *See Kern County Land Co. v. Occidental Petroleum Corp.*, 411 U.S. 582, 595 (1973) (describing the operation of the liability portion of the statute).

Congress believed that this method of enforcement would best effectuate the purpose of the Exchange Act.  *See* Robert S. Ruben & Myer Feldman, *Statutory*

_____

[2] Thomas Corcoran was a principal draftsman of the Exchange Act.  *Leroy v. Great W. United Corp*., 443 U.S. 173, 182 at n.13 (1979).

*Inhibitions Upon Unfair Use of Corporate Information by Insiders*, 95 U. Pa. L. Rev. 468, 472 *et seq.* (1947), *quoted in Benisch v. Cameron*, 81 F. Supp. 882, 884 at n.3 (S.D.N.Y. 1948); *Gollust*, 501 U.S. at 124-25 & n.7 ("Congress clearly intended to put 'a private profit motive behind the uncovering of this kind of leakage of information, [by making] the stockholders [its] policemen.'" (*quoting Hearing Before the House Comm. On Interstate & Foreign Commerce on H.R. 7852 and H.R. 8720*, 73d Cong., 2d Sess., 136 (1934) ("House Committee Hearing") (Testimony of Thomas G. Corcoran). Upon receiving a demand letter from a shareholder describing an alleged violation of Section 16(b), the issuer has 60 days to act against an insider. 15 U.S.C. § 78p(b). If the issuer chooses not to file suit or "fail[s] to diligently prosecute the same thereafter," a shareholder can step in and file a lawsuit on behalf of the issuer. *Id.*; *Gollust*, 501 U.S. at 122.

This added enforcement mechanism is important because corporate officers and directors "might well be reluctant to sue a fellow officer or director or an important stockholder." *Fistel v. Christman*, 133 F. Supp. 300, 304 (S.D.N.Y. 1955). In passing a law, "Congress must at the very least identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring suit." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment). Congress adhered to this blueprint when it passed Section 16(b). It identified short-swing trading as an injury suffered by issuers and their

shareholders, it adopted a statute to vindicate that injury, and it left enforcement of the statute to the issuers and shareholders.

### 3.    Section 16(b) Common Law Analogues

The legislative history shows that Congress looked to common law doctrines of principal and agent and breach of fiduciary duty in drafting Section 16(b). "The stress was on fiduciary responsibility." *American Standard*, 510 F.2d at 1060. This is reflected in testimony of Section 16(b)'s principal draftsman, Thomas Corcoran, in Congressional hearings for the proposed Section 16(b) and in the report of the Committee of Banking and Currency on the results of its investigation into security dealings, banking practices and their effects:

> This is one of the most important provisions in the act in that it provides for protection of the stockholder from so-called "corporate insider".[3]
>
> Among the most vicious practices unearthed at the hearings before the subcommittee was the flagrant betrayal of their fiduciary duties by directors and officers of corporations who used their positions of trust and the confidential information which came to them in such positions, to aid them in their market activities. Closely allied to this type of abuse was the unscrupulous employment of inside information by large stockholders who, while not directors and officers, exercised sufficient control over the destinies of their companies to enable them to acquire and profit by information not available to others.[4]

---

[3] Senate Committee Hearings, at 6555 (Testimony of Thomas Corcoran).
[4] *Stock Exchange Practices, Report to the Senate Committee on Banking & Currency Pursuant to S. Res. 84 (72d Cong.) and S. Res. 56 and 97 (73d Cong.)*, S.

The Securities Exchange Act of 1934 aims to protect the interests of the public against predatory operations of directors, officers, and principal stockholders of corporations by preventing them from speculating in the stock of the corporations to which they owe a fiduciary duty.[5]

[Section 16(b)] Forbids him to carry on any short-term specualtions [*sic*] in the stock. He cannot, with his insider information get in and out of stock within six months. If he does, the profit goes to his company. That is simply an application of an old principle of law that if you are an agent and you profit by insider information concerning the affairs of your principal, your profits go to your principal.[6]

Similarly, Section 16(b)'s roots in common law principles governing

fiduciaries was addressed in a brief by Thomas G. Corcoran and Benjamin V.

Cohen before the House Committee on Interstate and Foreign Commerce to

support the constitutionality of the statute:

The requirements in section 15 [Section 16 as enacted][7] concerning transactions by officers, directors, and principal stockholders on securities of companies registered on licensed exchanges are designed both to give information to investors and to prevent manipulation and profits derived from knowledge gained in fiduciary capacity.[8]

---

Rep. No. 1455, 73d Cong., 2d Sess., p. 55 (1934) ("Senate Report"). Cited in *American Standard*, 510 F.2d at 1061 (2d Cir. 1974).

[5] Senate Report, p. 68.

[6] House Committee Hearing, at 133 (Statement of Thomas Corcoran).

[7] Section 16(b) was numbered as section 15(b) in the original version of what would develop into the Securities Exchange Act of 1934. *Foremost-McKesson*, 423 U.S. at 245.

[8] Brief Submitted by Thomas G. Corcoran and Benjamin V. Cohen in Support of Constitutionality of Stock Exchange Bill, House Committee Hearing, 925 at 937.

Section 16(b)'s provision for an issuer to recover an insider's profit has pre-1934 common law analogues. First, it is blackletter common law that fiduciaries may not make personal use of their principal's property and confidential information. *See e.g.*, Restatement (First) of Agency § 395 (1933). Second, the fiduciary is liable to his principal for any profits derived from use of the principal's property without showing any injury–the damage resides in the principal's loss of exclusive control over the property. *See,* Restatement (First) of Agency § 404. *See also*, *American Standard*, 510 F.2d at 1060-1061; *Gratz*, 187 F2d. 49-50; Restatement (First) of Trusts (1935) §§ 205, 206.

"In some jurisdictions, the pre-1934 common law recognized that trading on the basis of insider information was actionable." *See,* Jacobs at 344 (citing *Goodwind v. Agassiz*, 283 Mass. 358, 362, 186 N.E. 659, 661 (1933); *McMynn v. Peterson* [*Richardson-Phenix*], 186 Wis. 442, 468, 201 N.W. 272, 280 (1924). However, the law then permitted suit by the person trading with the insider rather than the issuer. *Id.*

Later, in *Brophy v. Cities Serv. Co.*, 31 Del. Ch. 241, 70 A.2d 5 (1949), the Delaware Chancery Court held that insider trading is a violation of a fiduciary's duty to the corporate principal. Jacobs at 344. Two decades later, the New York Court of Appeals reached a similar conclusion. *Id.* at 345. *See Diamond v.*

*Oreamuno*, 24 N.Y.2d 494, 248 N.E.2d 910, 301 N.Y.S.2d 78 (1969). Other cases are also in accord. *See* Jacobs at 345, n.1524.

> These cases are the common law analog of section 16(b). Indeed, the New York Court of Appeals relied on section 16(b) to reach its conclusion. To be sure, the common law authorities are grounded on the actual use of inside information, while section 16(b) applies whether or not the insider utilizes inside information. But the common law cases and section 16(b) can be reconciled by presuming that a section 16(b) insider trades on the basis of inside information. The legislative history and the Second Circuit support this common law analogy. On this basis, the payment to the issuer is not a windfall.

> Because plaintiffs in common law cases had difficulty proving that an insider's trade was based on inside information, Congress did not require such proof for a section 16(b) cause of action.

Jacobs at 345. (footnotes omitted).

## SUMMARY OF ARGUMENT

This is a garden variety §16(b) disgorgement case. Master Fund bought and sold FLWS common stock during a six month period while it had beneficial ownership of more than 10% of FLWS common stock. The district court dismissed Plaintiff's shareholder action on grounds that FLWS, and therefore Packer, lacked Article III standing in view of the Supreme Court's decision in *TransUnion* which holds, *inter alia*, that Article III standing cannot be established by relying entirely on a statutory violation or risk of future harm. *TransUnion,* 141 S. Ct. at 2213-2214. *See also*, *Maddox* 19 F.4th at 64.

*TransUnion* reaffirmed established constitutional standing doctrine, which requires a private plaintiff to show that he or she suffered a "concrete harm" that "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 578 U.S. at 341. In analyzing "concrete injury" the Supreme Court explained that the injury must find its roots in common law, but it need not be an "exact duplicate" of the common law. *TransUnion,* 141 S. Ct. at 2209. The Court also reaffirmed that Congress may "elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* at 2204-2205, *quoting*, *Spokeo*, 578 U.S. at 341.

The district court erred in failing to follow controlling precedent in *Bulldog* which recognizes that Section 16(b) finds in its roots common law doctrines of breach of trust and breach of fiduciary duties, and nearly 90 years of court precedents which recognize that a violation of the statute constitutes "injury in fact" to an issuer. *See, Bulldog,* 696 F.3d at 177-180; *Gratz*, 187 F.2d 49-50.

*Bulldog* explains the basis for Article III standing under the statute as findings its roots in harm recognized at common law (696 F.3d at 179-180):

> As we recognized in *Gratz*, § 16(b) is a statute that addresses the problem of insider trading by conferring on securities issuers a legal right, one that makes 10% beneficial owners "constructive trustee[s] of the corporation," 187 F.2d at 48, with a fiduciary duty not to engage in short-swing trading of the issuer's stock at the risk of

having to remit to the issuer any profits realized from such trading. It is the invasion of this legal right, without regard to whether the trading was based on inside information, that causes an issuer injury in fact and that compels our recognition of plaintiff's standing to pursue a § 16(b) claim here.

\* \* \* \*

Although Congress enacted § 16(b) to serve a general interest in safeguarding the integrity of the stock market against insider trading, it did not eliminate the injury requirement of standing. Rather, it created legal rights that clarified the injury that would support standing, specifically, the breach by a statutory insider of a fiduciary duty owed to the issuer not to engage in and profit from any short-swing trading of its stock. Such an injury in fact to Invesco having been satisfactorily alleged in this case, we reject Bulldog's standing challenge as without merit.

This holding in *Bulldog* is fully in accord with *TransUnion* and modern standing doctrine as represented by Supreme Court precedents in *Spokeo* and *Lujan*.

## STANDARD OF REVIEW

This Court reviews the district court's legal determination that Packer and FLWS lack Article III Constitutional standing *de novo*. *Sonterra Cap. Master Fund Ltd. v. UBS AG,* 954 F.3d 529, 533 (2d Cir. 2020). Packer's satisfaction of all statutory requirements to maintain this §16(b) action is not disputed. (A39, A129).

## ARGUMENT

## THE SUPREME COURT AND THE SECOND CIRCUIT HAVE UNIFORMLY UPHELD THE STANDING OF AN ISSUER AND A DERIVATIVE PLAINTIFF TO ASSERT SECTION 16(b) CLAIMS.

The district court decision held that because of *TransUnion*, "[t]he judicial landscape on standing … has markedly changed." (A132). Contrary to the court's holding, *TransUnion* only limited Article III standing by "looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts, we do not require an exact duplicate." *TransUnion*, 141 S. Ct. at 2209.

Section 16(b)'s common law analogues include state law principles of fiduciary duty prohibiting corporate insiders from trading based upon access to inside information because of the harm it will cause a company. *See, e.g.*, *Diamond*, 24 N.Y. 2d at 499 (N.Y. 1969) (quoted in *Bulldog*, 696 F.3d at 177-178); *see also Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, 61 FR 30376, 30381 at n.78 (June 14, 1996) ("The Commission believes that traditional state law fiduciary duties facilitate compliance with the underlying purposes of [§]16 by creating effective prophylactics against possible insider trading abuses."); *See also* Governing Law, § 3, *supra*.

**A.    The Supreme Court and Second Circuit Precedents
        Establish Standing for FLWS and Packer**

Every case in the almost 90-year history of the Exchange Act supports the

standing of the shareholder plaintiff and the issuer in Section 16(b) litigation.  The

district court decision is a judicial outlier which is inconsistent with Supreme Court

and Second Circuit decisions addressing and affirming a security holder's Article

III standing to pursue §16(b) claims.  *See, e.g.*, *Gollust*, 501 U.S. at 122-126;

*Bulldog*, 696 F.3d at177-180; and *Spokeo*.

*Gollust* and *Bulldog* represent judicial recognition of Congressional policy to

thwart insider trading in the securities markets.  Section 16(b) was enacted "'[f]or

the purpose of preventing the unfair use of information which may have been

obtained by [a statutory insider] . . . by reason of his relationship to the issuer.'

Congress recognized that short-swing speculation by stockholders with advance,

insider information would threaten the goal of the Securities Exchange Act to

'insure the maintenance of fair and honest markets.'" *Kern County*, 411 U.S. at 591

(quoting 15 U.S.C. § 78p(b)); *see also Bulldog*, 696 F.3d at 173-174 (summarizing

Congress's rationale for enacting Section 16(b)); Governing Law, § 2, *supra.*

Congress addressed short-swing speculation in the marketplace by enacting

a "flat rule" that takes the profits out of an entire "class of transactions" occurring

within a prescribed time frame "in which the possibility of abuse" of insider

information "was believed to be intolerably great." *Reliance Elec. Co.*, 404 U.S. at 422. Section 16(b)'s flat rule effectively makes ten percent "'beneficial owners' fiduciaries as directors and officers were anyway," based on common law principles by making all short-swing transactions by such persons in the issuer's stock "breaches of trust." *Gratz*, 187 F.2d at 49. The statute "operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and by-passing corrupt insiders who skirt the letter of the prohibition." *Magma Power*, 136 F.3d at 320-321. All that is necessary to establish liability is evidence of insider status and a profitable short-swing transaction. *Id.* at 320.

Rather than charge the SEC with enforcing §16(b), Congress left that task exclusively to private parties. *Gollust,* 501 U.S. at 122. The Exchange Act provides that suit to recover short-swing profits may be instituted "by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter." 15 U.S.C. § 78p(b). *Gollust*, 501 U.S. at 124-125. Section 16(b) affords the issuer and a derivative shareholder a legally protected interest in proscribed short-swing profits. The Supreme Court unanimously held that a derivate plaintiff had statutory and constitutional standing to bring suit under Section 16(b). *Gollust*, 501 U.S. at 127-128.

In *Bulldog,* the Second Circuit held that a shareholder plaintiff's ongoing financial interest in recovering short-swing profits pursuant to §16(b) is sufficient to satisfy the injury-in-fact requirement of Article III as to that shareholder. *Bulldog,* 696 F.3d at 174, 179-180.  "Where, as here, a shareholder plaintiff pursues a §16(b) claim on behalf of an issuer, the claim 'is derivative in the sense that the corporation is the instrument . . . for the effectuation of the statutory policy." *Bulldog,* 696 F.3d at 175 (quoting *Magida v. Cont'l Can Co.,* 231 F.2d 843, 846-47 (2d Cir. 1956), *cert. denied*, 351 U.S. 972 (1956)).  The Circuit recognized that the issuer, and by extension, the derivative plaintiff, suffered distinct and real injury since its reputation of integrity and marketability of its stock were damaged by insider trading, which is a serious breach of fiduciary duty. *Bulldog*, 696 F.3d at 177-179.  It is the harm suffered by the issuer which meets the showing of harm necessary for Packer's standing.  *See Blau v. Mission Corp.,* 212 F.2d 77, 79 (2d Cir. 1954), *cert. denied,* 347 U.S. 1016 (1954); *Bulldog*, 696 F.3d at 177-178.

### B.  *Bulldog* Has Not Been Undermined by Subsequent Supreme Court or Second Circuit Decisions

#### 1.  The *TransUnion* Decision

In *TransUnion*, the defendants appealed a class action award to a group of plaintiffs who had asserted claims under the Fair Credit Reporting Act, 15 U.S.C.

§1681 *et seq*. ("FCRA").  The FCRA created a cause of action for individuals whose credit reports contained inaccurate information which the credit reporting company had failed to correct.

The plaintiffs in *TransUnion* were divided into two groups: those whose inaccurate reports had been disseminated to third parties, and those whose reports were inaccurate but had not been disclosed to third parties.  The Supreme Court found that the first group had standing and the second did not.  The Court, citing *Spokeo*, held that even if the defendants' conduct violated the FCRA, each plaintiff had to demonstrate a concrete injury to satisfy Article III standing requirements.  Concrete injury could be shown if the harm caused to a particular plaintiff bore a "close relationship" to a harm traditionally recognized by American courts, including physical harm, monetary harm, or various intangible harms.  The Court noted that the close relationship standard did not require an exact match between the statutory harm and the common law claim.  *TransUnion*, 141 S. Ct. at 2209.  In applying this standard to the facts before them, the Court concluded that the group whose information was disseminated could show a link to common law defamation claims, but the second group could not, dismissing those claims for lack of standing.

In the aftermath of that decision, the Second Circuit in *Maddox* held that there was no concrete injury—and thus no standing—to plaintiffs suing under the

New York mortgage-satisfaction-recording-statutes. Analogizing the New York statutes to the FCRA in *TransUnion*, the Second Circuit found that the bank's delay in recording the mortgage satisfactions, without proof of any injury to any plaintiff resulting from the delay, was insufficient to satisfy Article III. *Maddox*, 19 F.4th at 64-65 (plaintiffs did not allege a cloud on title to the property or a reputational or other harm recognized under the common law).

In *Klein v. Cadian Capital Mgmt., LP*, 15 Civ. 8140 (ER), 2017 WL 4129639 (S.D.N.Y. Sept. 14, 2017), *vacated on other grounds and remanded*, 906 F.3d 215 (2d Cir. 2018), Section 16(b) defendants moved to dismiss for lack of standing, claiming that *Spokeo* had overruled *Gollust* and *Bulldog*. Judge Ramos had little difficulty in rejecting the argument.

> *Bulldog Investors* is consistent with *Spokeo* in that the Second Circuit recognized that a statutory violation serves as a basis for Article III standing only where a violation of a statute goes hand in hand with a distinct, palpable and non-theoretical injury in fact, can. *See* 696 F.3d at 177-78. In *Bulldog Investors*, the Court did not find standing on the basis of a statutory violation alone: it recognized that <u>the corporate issuer (and by extension, the derivative suit plaintiff) suffered distinct and real injury in that case, since its reputation of integrity and marketability of its stock were damaged by insider trading, which is a serious breach of fiduciary duty.</u> *Id.* Moreover, *Spokeo* does not even mention *Gollust*, much less overturn it. This Court could reject the holdings in *Gollust* or *Bulldog Investors* if a showing is made that its rationale was overruled either implicitly or expressly by the Supreme Court in *Spokeo*, but no such showing has been made here. *See United*

> *States v. Ianniello*, 808 F.2d 184, 190 (2d Cir. 1986), *abrogated on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989).

*Klein*, 2017 WL 4129639 at *6 (underscoring added).

Two years *after Spokeo*, the Second Circuit reaffirmed the Section 16(b) standing rule "…there is a case or controversy in a Section 16(b) case so long as the party bringing suit is either the corporation that issued the securities in question or a *current security holder* of that corporation." *Klein v. Qlik Techs., Inc.*, 906 F.3d 215, 220 (2d Cir. 2018), *cert. dismissed*, 139 S. Ct. 1406 (2019), citing *Bulldog* (emphasis added). *See*, *Cruper-Weinmann v. Paris Baguette America, Inc.*, 235 F. Supp. 3d 570 (S.D.N.Y. 2017), *aff'd*, 861 F.3d 76 (2d Cir. 2017) where Judge Rakoff found that §16(b) meets *Spokeo's* standing analysis, as the issuer had "a right to profits …deriv[ing] from breach of a fiduciary duty created by the statute in favor of the issuer." *Id.* at 576, n.4, citing *Bulldog*, 696 F.3d at 178.

### 2. Section 16(b) Standing Survives *TransUnion* Analysis Because It Finds Its Roots in Common Law

In analyzing "concrete injury", the Supreme Court held that the injury must find its roots in common law, but it need not be an "exact duplicate" of the common law. *TransUnion*, 141 S. Ct. at 2209. A harm that "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts" is sufficient. *TransUnion*, 141 S. Ct. at 2200, 2209. *See*, *e.g.*, *DeConstanzo v. Glaxosmithkline PLC*, 21 Civ. 4869 (GRB) (AYS), 2022 WL

25

17338047 at *7 (E.D.N.Y. Nov. 29, 2022), *Bohnak v. Marsh & McLennan Cos.*, 580 F. Supp. 3d 21, 30 (S.D.N.Y. 2022), *Sucesores de Don Carlos Nuñez y Doña Pura Galvez, Inc. v. Société Générale, S.A.*, 577 F. Supp. 3d 295, 309 (S.D.N.Y. 2021) ("*Spokeo*… does not require that a statutory claim have *identical elements to* claims rooted in such a traditional harm"), and *Moreira v. Société Générale S.A.*, 573 F. Supp. 3d 921, 927-928 (S.D.N.Y. 2021). The legislative history of Section 16(b) and cases analyzing Section 16(b) standing have emphasized its close connection to common law claims for breach of fiduciary duty.

In enacting the statute, Congress had before it "overwhelming evidence of widespread abuses by corporate fiduciaries." *Blau v. Oppenheim,* 250 F. Supp. 881, 884 (S.D.N.Y. 1966). These abuses were not uniformly prohibited by the existing patchwork of mostly state laws. *See* Cook & Feldman, 66 Harv. L. Rev. at 408-10. *See also*, *Gratz*, 187 F.2d at 49 ("For many years a grave omission in our corporation law had been its indifference to dealings of directors or other corporate officers in the shares of their companies. When they bought shares, they came literally within the conventional prohibitions of the law of trusts; yet the decisions were strangely slack in so deciding.") Congress deemed these abuses injuries to both issuers and shareholders and, based on common law doctrines of principal and agent and breach of fiduciary duty, acted within its authority to eradicate the abuses by creating "legal rights that clarified the injury that would support standing,

26

specifically, the breach by a statutory insider of a fiduciary duty owed to the issuer not to engage in and profit from any short-swing trading of its stock." *Bulldog*, 696 F.3d at 180. *See* Governing Law, § 3, *supra*. (discussing Section 16(b)'s common law analogues).

In *Bulldog*, the Second Circuit analyzed the common law roots of Section 16(b) and concluded that Section 16(b) meets the constitutional standing requirements:

> The purpose of § 16(b) is stated in its opening clause: to prevent "the unfair use of information which may have been obtained by [a] beneficial owner, director, or officer by reason of his relationship to the issuer." 15 U.S.C. § 78p(b).
>
> \*       \*       \*
>
> More pertinent to the questions of injury and standing that concern us today is *Gratz's* recognition that § 16(b)'s flat rule effectively makes 10% "beneficial owners fiduciaries as directors and officers were anyway," at least to the extent of making all short-swing transactions by such persons in the issuer's stock "breaches of trust." *Id. at 49* (internal quotation marks omitted); *see also Adler v. Klawans*, 267 F.2d 840, 844 (2d Cir. 1959) (commenting that Congress's "intent in the enactment of § 16(b) was to discourage what was reasonably thought to be a widespread abuse of a fiduciary relationship" by "three classes of persons"). Thus, Bulldog cannot maintain that it owed no fiduciary duty to Invesco. That fiduciary duty was created by § 16(b), and it conferred upon Invesco an enforceable legal right to expect Bulldog to refrain from engaging in any short-swing trading in its stock. The deprivation of this right establishes Article III standing. See, e.g., *Warth v. Seldin,* 422 U.S. at 500.

*Bulldog*, 696 F.3d at 176-177.

The Second Circuit recognized in *Bulldog* that there is no requirement under common law for statutory fiduciaries to have access to inside information to breach the trust they accepted when they became statutory insiders.

> Nor can Bulldog deny any injury to the issuer from its short-swing trading by pointing to the fact that § 16(b) operates without regard to whether the statutory fiduciaries were actually privy to inside information . . . . As Judge Hand explained, even at common law, a fiduciary's duty to a beneficiary often required more than the avoidance of actual unfair dealing: "'A trustee with power to sell trust property is under a duty not to sell to himself either at private sale or at auction, whether the property has a market price or not, and whether the trustee makes a profit thereby.'" *Gratz v. Claughton*, 187 F.2d at 49 (quoting Restatement of Trusts § 170(1), cmt. b). Drawing an analogy between trust law and the fiduciary duty created by § 16(b), Judge Hand observed that "[n]obody is obliged to become a director, an officer, or a 'beneficial owner'; just as nobody is obliged to become the trustee of a private trust; but, as soon as he does so, he accepts *whatever* are the limitations, obligations and conditions attached to the position, and any default in fulfilling them is as much a 'violation' of law as though it were attended by the sanction of imprisonment." *Id.* (emphasis added).

> Thus, pursuant to § 16(b), when a stock purchaser chooses to acquire a 10% beneficial ownership stake in an issuer, he becomes a corporate insider and thereby accepts "the limitation[]" that attaches to his fiduciary status: not to engage in any short-swing trading in the issuer's stock. *Id.* . . .

*Bulldog*, 696 F.3d at 177

*Bulldog* also recognizes that breach of fiduciary duty by a corporate insider in violation of Section 16(b) provides additional concrete harm to the corporate issuer's reputation.

A corporate issuer, after all, has an "interest in maintaining a reputation of integrity, an image of probity," for its § 16(b) insiders "and in insuring the continued public acceptance and marketability of its stock." *Diamond v. Oreamuno,* 24 N.Y.2d 494, 499, 248 N.E.2d 910, 301 N.Y.S.2d 78, 82 (1969) (discussing New York law intended to remedy "the same sort of 'abuse of a fiduciary relationship' as is condemned by" § 16(b)).

*Bulldog*, 696 F.3d 177-78.

Nearly four decades before *Bulldog,* in *American Standard*, 510 F.2d at 1060-61 (2d Cir. 1974), the Circuit noted that Section 16(b) was akin to a claim for breach of fiduciary duty:

Congress was concerned about the 'outside' owners of securities which were being cavalierly traded by fiduciaries whom the stockholders had elected to positions of trust. The stress was on fiduciary responsibility. The purpose of s 16(b) was to prevent directors, officers and principal stockholders 'from speculating in the stock of the corporations to which they owed a fiduciary duty.' S.Rep. No. 1455, 73rd Cong.2d Sess. 68 (1934). Congress imposed liability for his profits upon the statutorily presumed faithless trustee without proof of actual loss. The profits were to be restored to the presumptively aggrieved cestui que trust, the issuer of the securities. The prize could be given to no other, for an alternative would have required proof of actual injury. If the asset of the corporation—secret information—was improperly taken, the profits were to be restored to the cestui. See Judge Learned Hand in *Gratz v. Claughton*, 187 F.2d 46, 49-50 (2 Cir. 1951), *cert. denied*, 341 U.S. 920, 71 S. Ct. 741, 95 L.Ed. 1353 (1951). The beneficial owner concept was intended simply to expand the class of putative fiduciaries.

In addition to the obvious analogue to breach of fiduciary duty, courts have likened Section 16(b) as a remedy for damages to both the issuer and the derivative plaintiff. *See, Smolowe*, 136 F.2d at 241 (disgorged profits increased the value of

the shareholder plaintiff's holdings); *Rothenberg v. United Brands Co.*, 74 Civ. 5735, 1977 WL 1014, at *4 (S.D.N.Y.), *aff'd*, 573 F.2d 1295 (2d Cir. 1977). (shareholders will receive an indirect benefit in terms of increased shareholder equity).

Thus, *TransUnion* is in no way inconsistent with the plethora of Section 16(b) cases that have established standing, nor does it overrule them. Both Packer and FLWS have suffered "concrete injury" within the meaning of *Trans Union* and *Spokeo*.

## **CONCLUSION**

The Court should vacate the judgment below and remand to the district court for further proceedings on the merits.

New York, New York
June 22, 2023

Respectfully submitted,

OSTRAGER CHONG FLAHERTY
  & BROITMAN P.C.

  */s/ Glenn F. Ostrager*
Glenn F. Ostrager
Joshua S. Broitman
Roberto L. Gomez
437 Madison Avenue
New York, New York 10022
Tel.: (212) 681-0600
Fax: (212) 681-0300
gostrager@ocfblaw.com

30

Paul D. Wexler
Attorney at Law
437 Madison Avenue
New York, New York 10022-7035
Tel.: (212) 681-0600
pdw@paulwexlerlaw.com


*Attorneys for Appellee Brad Packer*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed.R.App. Rule 32(a)(7)(B) because this brief contains 7,091 words, excluding the parts of the brief exempted by Fed.R.App.P. 32(f) and the rules of this Court. In making this certification, I have relied upon the word count function in Microsoft Word.

This brief complies with the typeface requirements of Fed.R.App. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 Word in Times New Roman, Font Size 14.

Dated:    June 22, 2023

 _/s/ Glenn F. Ostrager_
Glenn F. Ostrager

*Attorney for Appellee Brad Packer*